

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 18, 1957

Hon. Robert S. Calvert
State Comptroller
Austin, Texas

Hon. Jesse James
State Treasurer
Austin, Texas

Opinion No. WW-69

Re: Constitutionality of
proposed procedure for
investment of Permanent
University Funds under
Art. VII, Section 11(a)

Gentlemen:

Your joint request for an opinion of this office presents
the following questions:

1.  Is the proposed procedure for the
    purchase and sale of corporate se-
    curities for and on behalf of the
    Permanent University Fund in com-
    pliance with Article VII, Section
    11(a) of the Constitution?

2.  From what fund are the documentary
    stamp taxes, transfer taxes and fees,
    and commissions payable?

A prior opinion of this office, Attorney General Opinion
MS-263 (1956), held that the Board of Regents of the Uni-
versity of Texas is not authorized to pledge or lend the
credit of the State, and the addition of Article VII, Sec-
tion 11(a) to our Constitution does not grant such authori-
ty. In that opinion this office held that the University,
rather than lend the credit of the State, must employ the
customary business practices whereby the title to securi-
ties will pass to the purchaser prior to the time physical
possession is acquired.

The proposed steps outlined in your letter (attached to
this opinion as Appendix A) are based upon the rationale
outlined in our prior opinion. We have carefully examined
the proposed procedure and find that it will not result in

the lending of the credit of the State and that it will
comply with the requirements of Article VII, Section 11(a)
of the Constitution.   Your first question is answered in
the affirmative.

Your second question relates to the proper treatment of
documentary stamp taxes, transfer taxes and fees and com-
missions as expenses in connection with the acquisition
of the securities.  These items of expense must be dis-
tinguished from premiums, discounts, accrued interest, in-
vestment counsel fees and administrative expenses which
are not considered by this opinion.

In Attorney General Opinion MS-263 (1956), consideration
was given to the general effect of the new constitutional
provision, and it was there stated:

>"A consideration of the provisions of
>Article 7, Sections 10, 11, 11(a), 12
>and 15 of the Constitution of Texas,
>shows quite clearly that the only change
>in our Constitution affected by the
>adoption of Article 7, Section 11(a) was
>to increase the permissive investments
>of the Permanent University Fund.  The
>sole purpose of the endowment or non-
>expendable fund is to produce revenue
>to maintain the institution  endowed,
>and the new provision of the Constitu-
>tion is merely to aid in the procure-
>ment of that objective by the broaden-
>ing of the investment portfolio."

We hold to the view therein expressed; no basic change has
been made in the time-honored distinction and separation be-
tween the Available and Permanent University Funds, the only
question being which fund should pay such expenses of ac-
quiring the securities under Article VII, Section 11(a) of
the Constitution.

Article VII, Section 11 of the Constitution still requires
that the Permanent University Fund be retained in the
Treasury of the State.  Article VII, Section 11(a), by its
own terms, is self-enacting and the absolutely essential
powers to carry the program into effect are necessarily
conferred upon the Board of Regents by implication.  The

Hon. Robert S. Calvert
Hon. Jesse James        - page 3 (WW-69)


payment of such required commissions, fees and taxes, be-
fore the delivery of the securities to the Permanent Uni-
versity Fund at the State Treasury, are costs of acquiring
the securities and must be paid from the permanent Univer-
sity Fund.  This is the ordinary and customary business
and accounting practice and the constitutional provision
infers that the customary business procedures will be
followed.

## SUMMARY

The procedure for the purchase of cor-
porate securities submitted (attached
as Appendix A) complied with Article
VII, Section 11(a) of the Constitution
of Texas, and does not lend the credit
of the State.  Applicable documentary
stamp taxes, transfer taxes and fees,
and commissions required to be paid to
effect delivery of securities purchased
under Article VII, Section 11(a) are
costs of acquisition and payable from
the Permanent University Fund.


                          Very truly yours,


                          WILL WILSON
                          Attorney General


                      By  *Elbert M. Morrow*

                          Elbert M. Morrow
EMM-s                     Assistant

APPROVED:

OPINION COMMITTEE

By: H. Grady Chandler, Chairman

PROPOSED PROCEDURE IN CONNECTION WITH
PAYMENT FOR AND DELIVERY OF CORPORATE SECURITIES
PURCHASED AND SOLD FOR THE PERMANENT UNIVERSITY FUND

- Purchase of Stocks -

A.  Payment:
1.  Endowment Office to place order for purchase of stock;
    broker to purchase stock as instructed; payment to be
    made to broker on fourth business day following day on
    which stock is purchased. (Saturday is not a business
    day for broker.)

2.  Broker to confirm purchase with telegram to Endowment
    Officer on day of purchase, the telegram to report price
    and total extensions.

3.  Endowment Office to prepare voucher and supporting letters
    on day of purchase and turn over to University Auditor
    for processing, confirming telegram to be attached until
    invoices can be received from broker.

4.  On day of purchase, broker to air mail to Endowment Of-
    ficer an invoice in triplicate with notarized affidavit
    attached to original; invoice to arrive not later than
    second business day following purchase.

5.  On third business day following purchase, Auditor's Office
    to process voucher at State Comptroller's and State Trea-
    surer's Offices.

6.  State warrant to be issued payable to local bank for
    account of broker; warrant to be turned over to local
    bank on third business day; bank to give receipt for
    warrant; bank to exchange warrant at State Treasurer's
    Office on third business day for bank draft (probably
    on Dallas bank); local bank to wire funds to broker on
    fourth business day to constitute required payment.
    (In this connection, it will be necessary for each broker
    who is paid through a local bank to give the bank a
    power of attorney authorizing bank to endorse State
    warrant and exchange for a bank draft.)

B.  Registration of Stock Certificates, Delivery of Stock Certifi-
    cates and Subsequent Delivery of Stock Dividends:
1.  In payment letter prepared by Endowment Office, stock
    transfer agent to be advised to have the registration and
    delivery of stock certificates and the subsequent mailing
    address for dividends, reports, etc., as

-1-

Permanent University Fund of The University of Texas
Austin 12, Texas
Care of Endowment Officer

2. Upon receipt of registered stock certificates (usually by registered mail) by Endowment Officer, certificates received to be checked for proper registration, number of shares, etc.

3. Endowment Officer to prepare deposit warrant request addressed to State Comptroller and to turn over stock certificates with deposit warrant request to University Auditor. Auditor to set up proper purchase record on his card system files.

4. Auditor to deliver registered stock certificates to State Treasurer on the following day after receipt from Endowment Officer. The State Treasurer to check correctness and give the University Auditor a receipt for the stock certificates. (This receipt could be effected by having the State Treasurer's authorized representative countersign the copy of the deposit warrant request designated for the University Auditor. The Auditor would in turn conform the copy designated for the Endowment Office.)

5. Upon receipt of cash dividends in the form of checks by Endowment Office, Endowment Office to check for correctness according to dividends declared by company, to post to Endowment Office records, and to turn over dividend checks to University Auditor, after endorsement on behalf of the University by the Endowment Officer or the Assistant to the Endowment Officer.

6. Auditor to post dividends to proper card records in Auditor's Office and to follow routine procedure as currently followed in turning over interest checks on Government Bonds to State Treasurer. The schedule used by Auditor would be revised for dividend payments since amortization will not be involved.

7. Stock dividend certificates received by Endowment Office to be checked and processed in the same manner as the handling of stock certificates received as a result of a purchase.

C. Stock Splits and Stock Rights:
1. Certificates for stock splits to be received by Endowment Office and processed as are certificates for a stock purchase. In some instances, it might be required that old certificates would have to be sent in and new certificates forwarded in lieu thereof; but current practice is for the holder to retain old certificates and to receive enough new certificates to effect split with stickers furnished, indicating the change in par value, to be placed on old stock certificates.

2. Subscription warrants for stock rights to be received by Endowment Office. Endowment Office to prepare voucher for purchase of stock authorized (exercise of stock rights), including any necessary purchase of rights to round out for purchase of full share of stock. Photostatic copies of subscription warrant are to be attached to each copy of voucher as supporting data.

The subscription warrant to be signed on behalf of The Permanent University Fund of The University of Texas by both the Endowment Officer (or the Assistant to the Endowment Officer) and the State Treasurer (or the Acting State Treasurer).

Subscription warrant and State warrant to be turned over by University Auditor to local broker for exercise of all stock rights. Local broker to effect exercise of rights and have certificates for stock registered and mailed as indicated in B. 1. Endowment Office to handle stock certificates in the same manner as the handling outlined for other purchases of stock.

- **Purchase of Corporate Bonds** -

A. **Payment, Delivery and Interest Payments:**
1. For corporate bonds already on market (secondary market) --
   a. Endowment Office to place order for purchase of corporate bonds; broker to purchase bonds as instructed; payment to be made on fourth business day following day on which bonds are purchased, with accrued interest to be paid to fourth business day; payment to be effected through local bank as outlined in A. 6.

   b. Delivery of bonds to be made by broker through a local bank direct to State Treasurer. Upon advice from State Treasurer that bonds are in hand (letter to be written by State Treasurer's representative to Endowment Office with copy to Auditor, giving numbers and denominations of bonds and stating coupons attached), Endowment Office to prepare deposit warrant request in same manner as currently is followed for municipal bonds purchased for the Permanent University Fund.

2. For corporate bonds on original issue --
   a. Endowment Office to place order for purchase of part of bonds of an original issue of corporate bonds.

   b. Payment and delivery to be effected in same manner as purchase of initial issue of municipal bonds for the Permanent University Fund, with accrued interest to be paid to date of payment and delivery through local bank when new issue is ready for delivery.

-3-

3.  Interest Payments --
    Same procedure to be followed as currently is being
    followed by University Auditor for municipal bonds.
    Auditor to prepare coupon clipping and amortization
    schedule and turn over to State Treasurer; State
    Treasurer to send coupons through for collection.

- Sale of Securities -

A.  Delivery of Security to Broker:
    1.  It will be necessary when a sale order is placed with
        a broker to get the actual security from the State Trea-
        surer and deliver it to the broker at the time the order
        is placed to sell.

        a.  If registered stock or bond, assignment in blank will
            be signed by the Endowment Officer or the Assistant
            to the Endowment Officer and by the State Treasurer
            or the Acting State Treasurer, with signatures guaran-
            teed by bank or member of New York Stock Exchange.

        b.  For security reasons, sales (which will be infrequent)
            will be handled through a local broker.

        c.  Endowment Office to prepare sale order letter to broker,
            copy being made for State Treasurer, State Comptroller,
            and University Auditor.  Endowment Office to prepare
            letter to State Comptroller requesting that he authorize
            the State Treasurer to withdraw securities to be sold
            and to deliver upon receipt to local broker.  Attached
            to the request to State Comptroller will be a certified
            copy of Minutes of the Board of Regents authorizing
            sale of the specific securities.

        d.  State Treasurer to withdraw securities upon authoriza-
            tion by the State Comptroller.  University Auditor and
            representative of local broker to meet at State Trea-
            surer's Office to effect delivery of the securities,
            the Auditor processing the request for withdrawal
            through Comptroller to Treasurer.  Broker to give
            receipt for securities to State Treasurer.  University
            Auditor to conform copies of receipt for Auditor's
            files and Endowment Office's files.

        e.  Broker to sell security as instructed and confirm to
            Endowment Office.

        f.  Endowment Office to prepare invoice to broker, copies
            being made for State Comptroller, State Treasurer,
            and University Auditor.  Invoice presented to broker
            who will pay net amount due on fourth business day by
            check turned over to Endowment Officer.

        g.  Endowment Office to check extensions on sale and turn
            over sale check and schedule to State Treasurer, copy of
            schedule being made for State Comptroller and Endowment
            Office.